JEFF TOLBERT et al. v. STATE.

No. A-4947. Opinion Filed April 16, 1926.
(245 Pac. 659.)

M. D. Hartsell, for plaintiffs in error.

Geo. F. Short, Atty. Gen., for the State.

EDWARDS, J. The plaintiffs in error, Jeff Tolbert and Charles McArthur, hereinafter called defendants, were convicted in the county court of Muskogee county on a charge of transporting intoxicating liquor, and each sentenced to pay a fine of $250, and to serve a term of 90 days in the county jail.

An examination of the record discloses that about 4:30 a. m. of the night of the 30th day of August, 1923, certain officers of Muskogee county, upon information received, went upon the public highway about four miles

from Muskogee, and attempted to stop a car driven by the defendant Tolbert, in which was his codefendant McArthur and two other persons named Sherman Williams and Earl Hickerson. The car of the defendant refused to stop at the hail of the officers, and they pursued it, and twice attempted to pass, but were crowded off of the road by the defendant's car. The testimony is that they then fired at the casings, and some of the occupants of defendant's car stuck their heads out, and the officers thereupon fired at them and shot Sherman Williams and Charlie McArthur. It is not disclosed in the record, but stated in the briefs, that Sherman Williams later died from the wounds received. The defendant's car then stopped, and the officers came up and arrested the occupants, and searched the car, and found a gallon container which had been overturned, but which still contained about a half pint of whisky. In the back of the car they found a still. The defendant testified that about 10 o'clock on the night in question (the arrest took place about 4:30) he, with McArthur, went some miles in the country to figure on a job of carpenter work. In returning to Muskogee they overtook Williams and Hickerson carrying some bulky object in a sack, and permitted them to put it in the car and ride with them. The bulky object was the still in question. The defendant disclaimed any interest in it or knowledge that it was a still. They explained the long delay from the time they went out to see about the job of carpenter work and the time of the arrest by stating that they had tire trouble which occasioned the delay. The defendants present various assignments of error.

The defendants first complain that, since they were jointly charged with Sherman Williams and Earl Hickerson, and were tried without Williams and Hickerson being present, and without any application for severance by either the state or the defendants having been made,

the court exceeded its authority to their injury, citing Payne v. State, 10 Okla. Cr. 314, 136 P. 201. That case is not authority for the contention here made. That was a prosecution on a charge of felony, and without any application for order of severance, and over his objection, the defendant Payne was separately tried. This case is a prosecution for a misdemeanor, and, even if an objection on account of the separate trial would have availed, the defendants made no such objection. The record does show that, after the jury had been impaneled and sworn, and the county attorney was reading the information, the defendants' attorney objected, for the reason that the codefendants were not present and available as witnesses, but not on the ground that they were not being jointly tried. Section 2695, Comp. Stat. 1921, governs. It is:

"When two or more defendants are jointly prosecuted for a felony, any defendant requiring it must be tried separately. In other cases defendants jointly prosecuted may be tried separately or jointly, in the discretion of the court."

Under this section it is clear that in misdemeanor cases the trial court, where more than one defendant is charged, may permit or require the trial to be separate or joint, in its discretion.

Upon the second assignment, i. e., the insufficiency of the evidence, it is argued that the defendants, by their evidence, fully explained the presence of the whisky and the still in the car at the time of the arrest, and that under all the circumstances their evidence is more credible than that of the witnesses for the state. This court cannot weigh and determine the credibility of the witnesses; that is a matter exclusively within the province of the jury, who see and observe the witnesses and their appearance and demeanor on the stand; and, where there is

evidence which, if believed, supports the verdict, this court is not at liberty to set it aside for insufficiency.

The third assignment is directed to certain items of evidence of the state as incompetent. This, in part, is the evidence of the officers, that they were upon the highway looking for the car in which defendants were driving, in response to information received of the commission of some crime, or of some trouble upon the highway. The nature of the crime reported or the details were not brought out, and the bare fact that they were upon the highway in response to information is in nowise prejudicial. This assignment also is in part directed to testimony of statements made by Sherman Williams and others of those in the car of defendant at the time of the arrest. There was evidence that defendants and Williams and Hickerson were acting together. The statement of any one of them in the pursuit of the common design until it was fully accomplished was competent, particularly so where the statement was made in the presence of all. There was sufficient evidence that the unlawful act had not been completed at the time the statements were made. It was not erroneous under the circumstances shown to admit them. It is also urged that this evidence tends to prove the commission of some other offense than that of transporting intoxicating liquor. But the statements made were all a part of the same transaction, and formed a part of the res gestae, and tend to shed light on the charge for which the defendants were on trial, and that they might incidentally show the commission of some other offense does not render them inadmissible.

Complaint is made that the court erred in excluding testimony of conversations between defendants and Williams and Hickerson after they got in the car. The following appears in the record:

"Q. Did you at any time see or notice or take any particular notice of what was in the sack? A. No, sir; I didn't get out.

"Q. What was said between you and Williams and the other boys, if anything, after they got in the car coming up to the place where the officers were?

"County Attorney: Now, your honor, we object to that. It is hearsay of the purest kind.

"The Court: Sustained.

"Mr. Hartsell: Exceptions."

This was not followed by any offer of proof, and we are not informed whether anything was said, or, if there was, that it was material. This is the only exclusion of evidence pointed out in the record, and the error is not properly preserved for review in this court. Warren v. State, 6 Okla. Cr. 2, 115 P. 812, 34 L. R. A. (N. S.) 1121; Stouse et al. v. State, 6 Okla. Cr. 415, 119 P. 271; White v. State, 4 Okla. Cr. 144, 111 P. 1010.

Upon the assignment of error charging misconduct of the county attorney, it is contended that the cross-examination of the defendant Tolbert when interrogated as to whether he was drunk at the time of the arrest is prejudicial to the defendant. The officers had testified for the state that the defendant was intoxicated at the time of his arrest. His testimony was in direct conflict. It was not misconduct to interrogate him fully on this point, since such questions went to his ability to form correct impressions of the circumstances and to affect his credibility. While the county attorney was zealous, we do not perceive any substantial ground for the charge of misconduct in the cross-examination. Also under this assignment it is argued that the county attorney in his closing argument was guilty of misconduct, and there is set out in the brief a considerable portion of the closing argument. This is a mere resume of the facts proven and a

deduction of the county attorney from these facts. There is nothing in this assignment that would warrant a reversal.

Finally, it is argued that the court erred in refusing defendants' request for a definition of the term "reasonable doubt," citing Nelson v. State, 5 Okla. Cr. 368, 114 P. 1124, where it is said that the definition of the term "reasonable doubt" should not be given except upon proper request. This court recently, in the case of Pitman et al. v. State, 33 Okla. Cr. 165, 242 P. 288, said that it is not error for the trial court to decline to define the term "reasonable doubt," whether requested or not.

The action of the officers in shooting into the car in which the defendants were on the occasion in question appears to have been an act lacking in official good sense. While the circumstances of the pursuit of defendants under the information they had received were probably sufficient to lead to the belief that a felony had been committed, yet the resort to firearms by an officer to apprehend a feeling suspect should not be hastily adopted, and is entitled to the severest condemnation. Here, however, we are considering only the charge of illegal transportation of whisky, and are not to lose sight of the fact by reason of surrounding circumstances. If the fact of the shooting was not in this case, we think it could not be seriously urged that the case should be reversed. Upon a consideration of the entire record, we find no error that would warrant a reversal.

The case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.